UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

PLUMBERS & STEAMFITTERS LOCAL 267 PENSION
FUND by Earl R. Hall and Gregory Lancette, as Trustees and
fiduciaries of the Fund; PLUMBERS & TEAMFITTERS            5:24-cv-745(BKS/MJK)
LOCAL 81 ANNUITY FUND by Earl R. Hall and Gregory
Lancette, as Trustees and Fiduciaries of the Fund; PLUMBERS
& STEAMFITTERS LOCAL 81 INSURANCE FUND by Earl
R. Hall and Gregory Lancette, as Trustees and Fiduciaries of
the Fund; and UNITED ASSOCIATION OF PLUMBERS &
STEAMFITTERS, LOCAL UNION NO. 81, by Gregory
Lancette as Business Manager,

                                Plaintiffs,

v.

RINALDI MECHANICAL SERVICE, LLC, and NICK
RINALDI, individually,

                                Defendants.
_____

**Appearance:**

*For Plaintiffs*:
Daniel Kornfeld
Blitman & King LLP
443 North Franklin Street, Suite 300
Syracuse, New York 13204

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiffs Plumbers & Steamfitters Local 267 Pension Fund ("Pension Fund") by Earl R.

Hall and Gregory Lancette, as trustees and fiduciaries; Plumbers & Teamfitters Local 81 Annuity

Fund ("Annuity Fund") by Earl R. Hall and Gregory Lancette, as trustees and fiduciaries,

Plumbers & Steamfitters Local 81 Insurance Fund ("Insurance Fund"), by Earl R. Hall and

Gregory Lancette, as trustees and fiduciaries, and United Association of Plumbers & Steamfitters, Local Union No. 81 ("Local Union 81"), by Gregory Lancette as business manager, filed this action against Defendants Rinaldi Mechanical Service, LLC ("Company"), and Nick Rinaldi,[1] individually, alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Dkt. No. 5). Defendant Company has not answered the complaint, (Dkt. No. 1), or the amended complaint, (Dkt. No. 5), and has not otherwise appeared in this action. Presently before the Court is Plaintiffs' motion pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for default judgment. (Dkt. No. 15).

In the First Cause of Action, Plaintiffs allege that Defendant Company "failed and refused" to make necessary contributions and deductions under the collective bargaining agreements ("Agreements") for work done between September 1, 2022 and December 31, 2023, in the amount of $127,344.37, plus interest, liquidated damages, attorney's fees, and costs related to work, under the Agreements, Trusts, and the Collections Policy, Section 515 of ERISA, 29 U.S.C. § 1145, and Section 301 of Labor Management Relations Act ("LMRA"), 29 U.S.C. §185(a). (Dkt. No. 5, ¶¶ 20, 22–24).[2] For the following reasons, Plaintiffs' motion for default judgment is granted as to liability against Defendant Company, but denied as to damages without prejudice to renewal.

---

[1] This matter is stayed as to Defendant Nick Rinaldi in accordance with the automatic stay provision of the Bankruptcy Code 11 U.S.C. § 362. (Dkt. Nos. 21, 25); *see also In re Rinaldi*, No. 25-bk-30070 (N.D.N.Y. filed Jan. 31, 2025). Thus, the Court does not address the Second or Third Causes of Action, which solely concern Defendant Nick Rinaldi, at this time.

[2] The amended complaint's Fourth Cause of Action is a request for injunctive relief as to Defendant Company. (Dkt. No. 5, at 11 (Article VII, Section C)). As Plaintiffs do not address the Fourth Cause of Action in their present motion or appear to request such relief at this time, (*see* Dkt. No. 15-8), the Court does not consider this cause of action.

## II.     DISCUSSION

### A.     Standard of Review and Clerk's Entry of Default

"Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, under Rule 55(a), the plaintiff must obtain a clerk's entry of default. Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* N.D.N.Y. L.R. 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person[,] (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . [,] and (3) it has properly served the pleading to which the opposing party has not responded"). Second, under Rule 55(b)(2), the plaintiff must "apply to the court for entry of a default judgment." *Priestly*, 647 F.3d at 505; *see also* N.D.N.Y. L.R. 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . , a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

On June 29, 2024, Plaintiffs served Defendants with the summons and complaint. (Dkt. No. 15-10). On July 22, Plaintiffs requested a clerk's entry of default under Rule 55(a) for Defendants' failure to answer or otherwise appear in this action. (Dkt. No. 8). Plaintiffs' request was accompanied by an affidavit, as required by Local Rule 55.1, showing that: Defendant is a corporation and thus is not an infant, in the military, or incompetent; Defendant failed to appear in this action; and Plaintiffs properly served the summons and complaint. (Dkt. No. 15-10). On July 22, Plaintiffs received a clerk's entry of default against Defendant. (Dkt. No. 13). Plaintiffs

3

filed the instant motion for default judgment under Rule 55(b) on August 7. (Dkt. No. 15). Although Plaintiffs served the motion on Defendant Company, (*see* Dkt. No. 15, at 2 (certificate of service)), Defendant Company has filed no response. Therefore, Plaintiffs have met the procedural requirements for an order of default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure and Local Rule 55.2(b). Accordingly, the Court will address liability.

**B.     Liability for Unpaid and Delinquent Contributions and Deductions**

By failing to appear in this action or oppose this motion, Defendant Company is deemed to have admitted the factual allegations in the amended complaint. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint." (citation omitted)); *Rolex Watch, U.S.A., Inc. v. Pharel*, No. 09-cv-4810, 2011 WL 1131401, at *2, 2011 U.S. Dist. LEXIS 32249, at *5–6 (E.D.N.Y. Mar. 11, 2011) ("In considering a motion for default judgment, the court will treat the well-pleaded factual allegations of the complaint as true, and the court will then analyze those facts for their sufficiency to state a claim."), *report and recommendation adopted*, 2011 WL 1130457, 2011 U.S. Dist. LEXIS 32246 (E.D.N.Y. Mar. 28, 2011). But before entering default judgment, the Court must review the allegations to determine whether Plaintiffs have stated a valid claim for relief. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009); *Telequip Corp. v. Change Exch.*, No. 01-cv-1748, 2004 WL 1739545, at *1, 2004 U.S. Dist. LEXIS 14892, at *3 (N.D.N.Y. Aug. 3, 2004).

Under Section 515 of ERISA:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not

> inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

In the amended complaint, Plaintiffs allege that "Defendant Company is an employer in an industry affecting commerce as defined in Section 3(5)(11) and (12) of ERISA," (Dkt. No. 5, ¶ 12), and Section 301(a) of LMRA, (*id.* ¶ 13), and that the "Defendant Company is an employer of employees covered by employee benefit plans and multiemployer welfare benefit plans" within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and 1002(37), respectively, (*id.* ¶ 12). Plaintiffs also allege "that Defendant Company is party to one or more collective bargaining agreements" with Local Union 81,[3] binding it to the Declarations of Trust and Policy for Collection of Delinquent Contributions, which obligate it to make contributions to multiemployer plans and deduct specified amounts from employees' wages to be paid to the Union. (*Id.* ¶¶ 16–18). According to the First Cause of Action, Defendant Company is liable under ERISA and LMRA for failing to timely remit $127,344.36 in contributions and deductions owed under the Agreement for the period September 2022 through December 2023. (*Id.* ¶¶ 20, 22–23).

Plaintiffs have submitted a copy of the relevant Agreement between the parties. (*See* Dkt. No. 15-4 (Agreement between Local Union 81 and Defendant Company, May 1, 2022 to April 30, 2024)). Employers bound by the Agreement must make payments to the various funds described therein. (*Id.* at 15-16 (Section 20.1)). Under Article 14 of the Agreement, for every hour of work completed by an employee, the employer must contribute $10.90 to the Health and

---

[3] The amended complaint refers to "Local 267," (Dkt. No. 5, 16), but this appears to be a mistake carried over from the original complaint. The letter attached the Amended Complaint explains that the original complaint "mistakenly used the prior Local Union number 267," instead of Local Union 81, "for three of the Plaintiffs." (Dkt. No. 5-1, at 1; *see* Dkt. No. 1 (original complaint)).

5

Welfare Fund; $10.27 to the Pension Fund; $3.60 to the Annuity Fund; $1.50 to the Joint Apprenticeship and Training Committee Fund; $0.10 to the International Training Fund; and $0.10 to the Administration and Safety Program. (*Id.* at 11 (Section 14.1)). The Agreement also requires a $0.21 per-hour Defense Benefit and Building Fund deduction and a Working Dues Assessment of 2.25% (plus $0.75 per hour, for Journeymen). (*Id.* at 12 (Section 14.3)).

The Agreement provides that the employer "shall be judged 'delinquent'" "[i]f no payment has been received by the Fund prior to the 30th day following the end of the month during which hours are worked, and for which contributions are required." (*Id.* at 18 (Section 20.6)). The Agreement further provides that in the event of delinquency, the employer will be liable for the unpaid contributions, plus 2% monthly interest and an additional 20% in liquidated damages, as well as attorneys' fees, paralegal fees, audit fees and auditors' fees, and other collection costs. (*Id.* at 18 (Section 20.8)). The Agreement states that employers are similarly liable for delinquent deductions under the Agreement. (*Id.* at 20 (Article 21)). In addition, the Agreement expressly requires employers to comply with "all terms and provisions of each Trust Agreement establishing the respective Employee Benefit Funds and shall comply with all policies, rules, and regulations promulgated by the Trustees of the Fund," including the "Collections Policies and Regulations and Rules." (*Id.* at 16 (Section 20.3); *see also* Dkt. No. 15-5 (Local 267 Benefit Funds Collections Policy)). Rinaldi signed the Agreement for Defendant Company on May 31, 2022. (Dkt. No. 15-4, at 23).

Therefore, by virtue of the above contractual provisions, Plaintiffs' allegation that Defendant Company has failed and refused to pay the fringe benefit contributions and deductions due for work in covered employment from September 2022 through December 2023 is sufficient to establish Defendant Company's liability for delinquent contributions and deductions under

6

ERISA, the interest due thereon, liquidated damages, and reasonable attorneys' fees and costs. *See United States v. Beam*, No. 12-cv-87, 2012 WL 1802316, at *2, 2012 U.S. Dist. LEXIS 69054, at *4 (N.D.N.Y. May 17, 2012) ("By failing to answer plaintiff's complaint or oppose this motion, defendant has effectively conceded that[it] is bound by the terms of the [Agreement] [it] entered into with plaintiff."); *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 218 (E.D.N.Y. 2016) (finding the defendant liable to the plaintiff funds under Section 505 of ERISA, 29 U.S.C. § 1145 for failing, inter alia, to pay delinquencies). Accordingly, Plaintiffs' motion for default judgment is granted as to liability with respect to their Unpaid and Delinquent Contributions claim (First Cause of Action).

### C. Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). "Magistrate judges and district courts have interpreted this to mean that . . . damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order).

### 1. Unpaid and Delinquent Contributions

In their motion for default judgment, Plaintiffs seek to recover: $99,344.37 in delinquent contributions and deductions from the period September 2022 through December 2023, $25,055.05 in interest calculated from the date due through August 31, 2024, and $27,421 in

7

liquidated damages, (Dkt. No. 15-3, ¶ 12), and $3,610.38 attorney's fees and costs as of August 5, 2024, (Dkt. No. 15-1, ¶ 9; Dkt. No. 15-2).

ERISA's civil enforcement provision provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>
> > (i) interest on the unpaid contributions, or
> > (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

In support of their request for damages, Plaintiffs have submitted a "copy of an audit" prepared by Joseph W. McCarthy & Associates, following an examination of Defendant Company's payroll records for the period of September 1, 2022 through December 31, 2023. (Dkt. No. 15-3, ¶ 11 (citing Dkt. No. 15-6, at 2)). According to the audit and attached spreadsheets, Defendant Company owes $127,344.36 in delinquent contributions and deductions; $34,772.83 in interest, as calculated through August 31, 2024 pursuant to the Agreement for

contributions and ERISA Section 502(g)(2), 29 U.S.C. § 1132(g)(2)(E) for delinquent deductions; and $33,855.45 in liquidated damages, calculated as 20% of the delinquent contributions (Dkt. No. 15-6, at 2; *see also* Dkt. No. 15-7 (spreadsheets)). Although these numbers are largely supported by the audit report and spreadsheets, they are not the amounts Plaintiffs seek in the present motion. In his affidavit, Michael Nanno, Fund Manager, states that Plaintiffs seek: $99,344.37 in delinquent contributions and deductions from the period September 2022 through December 2023, $25,055.05 in interest calculated from the date due through August 31, 2024, and $27,421 in liquidated damages. (Dkt. No. 15-3, ¶ 12). Although this is a lesser amount, the Court must still "determine the damages based on appropriate evidence," and as Plaintiffs provide no explanation or evidentiary support for the amount they seek, the Court has no basis on which to ensure "that the damages [are] appropriate" in this case. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997). Thus, the Court cannot evaluate whether the amounts sought have been calculated in accordance with the relevant Agreement and ERISA. *See Upstate New York Eng'rs Health Fund v. Ransom*, No. 13-cv-1434, 2015 WL 145441, at *4, 2015 U.S. Dist. LEXIS 2965, at *11 (N.D.N.Y. Jan. 12, 2015) (explaining that under ERISA the plaintiffs are "entitled to interest on the unpaid contributions at the rates provided by the Trusts and [Agreements] or, where the Trusts and [Agreements] do not provide a rate, at a rate prescribed by 26 U.S.C. § 6621" (citing 29 U.S.C. § 1132(g)(2)(B))).

In addition, there appear to be several (albeit minor) gaps between the damages sought and the contributions and deductions specified in the Agreement. First, the deduction in the audit listed as "JM Fringe Assess. Total" does not appear to be present in the Agreement. (Dkt. No. 15-7, at 12; *see* Dkt. No. 15-4, at 12–14 (Article 14)). Additionally, the spreadsheets Plaintiffs

filed indicate that between April 2023 and May 2023, the rate of hourly contributions to the Joint Apprenticeship Training Committee Fund changed from $1.50 to $2.00. (Dkt. No. 15-7, at 6). However, the Agreement, as discussed above, specifies a rate of $1.50 per hour. (*See* Dkt. No. 15-4, at 11–14 (Article 14)). Finally, the Court notes that while the calculations otherwise appear consistent, two of the spreadsheets reflect dates outside the relevant time period. (*See* Dkt. No. 15-7, at 11–12 (listing dates as 4/2020 to 4/15/2021)). Thus, the Court declines to make a finding as to damages at this time. However, the Court will grant Plaintiffs leave to file further briefing and documentary evidence in support of their request for damages.

### 2. Attorneys' Fees and Costs

Plaintiffs appear to have adequately supported their request for an award of attorneys' fees and costs with an affidavit and contemporaneous billing records. (Dkt. No. 15-2). However, the Court will reserve decision as to attorneys' fees and costs pending receipt of further briefing as noted above.

### III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for default judgment (Dkt. No. 15) is **GRANTED** as to liability with respect to their Unpaid and Delinquent Contributions claim (First Cause of Action) but is **DENIED without prejudice to renewal** as to Plaintiffs' request for damages; and it is further

**ORDERED** that Plaintiffs must file and serve any renewed motion for default judgment within 30 days of the date of this Decision. Any renewed motion for default judgment must: (1) include briefing and documentary evidence addressing the deficiencies identified above in connection with the request for damages; (2) address how Plaintiffs plan to proceed with respect to the Fourth Cause of Action. If Plaintiffs do not wish to file a renewed motion for default

judgment, they must file and serve a status report within 30 days of the date of this Decision stating how they intend to proceed. And it is further

**ORDERED** that Plaintiffs serve copies of this Memorandum-Decision and Order on Defendants, Defendant Rinaldi's bankruptcy attorney, Jessica G. Grady, and Bankruptcy Trustee Mark W. Swimelar, and file a certificate of service within 14 days of the date of this Decision.

**IT IS SO ORDERED.**

Dated: July 1, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge