**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PLUMBERS & STEAMFITTERS LOCAL 267 PENSION FUND by Earl R. Hall and Gregory Lancette, as Trustees and fiduciaries of the Fund; PLUMBERS & TEAMFITTERS LOCAL 81 ANNUITY FUND by Earl R. Hall and Gregory Lancette, as Trustees and Fiduciaries of the Fund; PLUMBERS & STEAMFITTERS LOCAL 81 INSURANCE FUND by Earl R. Hall and Gregory Lancette, as Trustees and Fiduciaries of the Fund; and UNITED ASSOCIATION OF PLUMBERS & STEAMFITTERS, LOCAL UNION NO. 81, by Gregory Lancette as Business Manager,

5:24-cv-745 (BKS/MJK)

Plaintiffs,

v.

RINALDI MECHANICAL SERVICE, LLC, and NICK RINALDI, individually,

Defendants.

---

**Appearance:**

*For Plaintiffs:*
Daniel Kornfeld
Blitman & King LLP
443 North Franklin Street, Suite 300
Syracuse, New York 13204

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiffs Plumbers & Steamfitters Local 267 Pension Fund ("Pension Fund") by Earl R. Hall and Gregory Lancette, as trustees and fiduciaries, Plumbers & Teamfitters Local 81 Annuity Fund ("Annuity Fund") by Earl R. Hall and Gregory Lancette, as trustees and fiduciaries, Plumbers & Steamfitters Local 81 Insurance Fund ("Insurance Fund"), by Earl R. Hall and

Gregory Lancette, as trustees and fiduciaries, and United Association of Plumbers & Steamfitters, Local Union No. 81 ("Local Union 81"), by Gregory Lancette as business manager, filed this action against Defendants Rinaldi Mechanical Service, LLC ("Company"), and Nick Rinaldi,[1] individually, alleging that Defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (Dkt. No. 5). Defendant Company has not answered the complaint, (Dkt. No. 1), or the amended complaint, (Dkt. No. 5), and has not otherwise appeared in this action. On July 1, 2025, the Court granted Plaintiffs' motion for default judgment as to liability but directed further briefing and evidentiary support regarding their request for damages and as to their Fourth Cause of Action. (Dkt. No. 27; *see also* Dkt. No. 32 (Text Order directing additional briefing and submissions)). Plaintiffs subsequently filed three status reports in further support of their request for damages and state that their Fourth Cause of Action is moot as to Defendant Company and should be held in abeyance as to Defendant Nick Rinaldi, pending resolution of his bankruptcy petition. (Dkt. Nos. 29, 30, 33). For the reasons that follow, Plaintiffs' request for damages is granted.

## II. DISCUSSION

Plaintiffs seek an order awarding damages in the sum of $229,913.92, representing: $99,344.37 in fringe benefit contributions and deductions for work in covered employment during the period September 1, 2022 through December 31, 2023; $59,896.79 in interest related to the delinquency as of July 15, 2025; $57,746.28 in liquidated damages; $8,797.48 in attorneys' fees and costs as of July 11, 2025; and $4,129.00 in audit fees. (Dkt. No. 30-2, ¶ 10; *see also* Dkt. No. 33, at 1).

[1] This matter is stayed as to Defendant Nick Rinaldi in accordance with the automatic stay provision of the Bankruptcy Code 11 U.S.C. § 362. (Dkt. Nos. 21, 25); *see also In re Rinaldi*, No. 25-bk-30070 (N.D.N.Y. filed Jan. 31, 2025). Accordingly, the Court has not addressed the Second or Third Causes of Action, which solely concern Defendant Nick Rinaldi, at this time.

In addition to their original submissions, Plaintiffs have filed two supplemental affidavits by their auditor, Martin McCarthy, a Senior Auditor for Joseph W. McCarthy & Associates, (Dkt. No. 30-1; Dkt. No. 33, at 5–7), a supplemental affidavit by their attorney, Daniel Kornfeld, partner at Blitman & King LLP, (Dkt. No. 30-2, at 1–4), supplemental attorney billing records, (*id.* at 6–7), a supplemental letter brief, (Dkt. No. 33, at 1–2), an audit report dated July 23, 2025, (*id.* at 9), additional spreadsheets documenting delinquent contributions and deductions, (*id.* at 10–21), the agreement between Mechanical Trades and Master Plumber Association of CNY and United Association Plumbers and Steamfitters Local 81, (*id.* at 23–49), a sample "Working Dues Assessment" employer report, (*id.* at 51), and reports reflecting an increase in Joint Apprenticeship Training Committee contributions, (*id.* at 53–58).

**A. Damages**

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (citation omitted). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Id.* (citing Fed. R. Civ. P. 55(b)(2)). "Magistrate judges and district courts have interpreted this to mean that . . . damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010) (summary order).

### 1. Unpaid and Delinquent Contributions, Interest, and Liquidated Damages

In their motion for default judgment, as supplemented, Plaintiffs seek to recover: $99,344.37 in delinquent contributions and deductions from the period September 2022 through December 2023, $59,896.79 in interest calculated from the date due through July 15, 2025, and $57,746.28 in liquidated damages. (Dkt. No. 33, at 6).

ERISA's civil enforcement provision provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For the purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

In support of their request for damages, Plaintiffs have submitted a "copy of an audit" dated July 23, 2025, prepared by Joseph W. McCarthy & Associates, following an examination of Defendant Company's payroll records for the period of September 1, 2022 through December

31, 2023. (Dkt. No. 33, at 9). According to the audit and attached spreadsheets, Defendant Company owes $99,344.37 ($127,344.36 in delinquent contributions and deductions minus $28,000 in payments); $59,896.79 in interest, as calculated through July 15, 2025; and $57,746 in liquidated damages, calculated as 20% of the delinquent contributions and deductions. (Dkt. No. 33, at 9–21). As these numbers are supported by the audit report and spreadsheets and consistent with the amounts sought in the original motion for default judgment, except for the interest and liquidated damages, which have increased over time, (*see generally* Dkt. No. 15; *see also* Dkt. No. 33, at 9), the Court finds the damages requests are appropriate and have been calculated in accordance with the relevant Agreement and Collections Policy, (Dkt. No. 15-4; Dkt. No. 15-5), and ERISA, *see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997); *see also Upstate New York Eng'rs Health Fund v. Ransom*, No. 13-cv-1434, 2015 WL 145441, at *4, 2015 U.S. Dist. LEXIS 2965, at *11 (N.D.N.Y. Jan. 12, 2015) (explaining that under ERISA the plaintiffs are "entitled to interest on the unpaid contributions at the rates provided by the Trusts and [Agreements] or, where the Trusts and [Agreements] do not provide a rate, at a rate prescribed by 26 U.S.C. § 6621" (citing 29 U.S.C. § 1132(g)(2)(B))).

**2. Attorneys' Fees and Costs**

Plaintiffs assert that they incurred $8,148.75 in attorneys' fees for 22.6 attorney hours and $648.73 in costs through July 11, 2025, in their efforts to collect the Defendant Company's delinquent contributions and deductions. (Dkt. No. 15-2, at 3; Dkt. No. 30-2, at 2 (seeking $3,033.55 for 8.45 attorney hours and $576.83 in costs through August 5, 2024); Dkt. No. 30-2, at 2, 7 (seeking $5,115.20 for 14.15 attorney hours and $71.90 in costs from August 6, 2024 through July 11, 2025)).

Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), the Agreement, and the Collections Policy allow for such an award. *See* 29 U.S.C. § 1132(g)(2)(D) (reasonable attorney's fees and costs of the action); (*see also* Dkt. No. 15-3, ¶ 10; Dkt. No. 15-5, at 3). And district courts have "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008). "In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)). This approach requires a district court to set "a reasonable hourly rate, taking account of all case-specific variables," and determine "the appropriate billable hours expended." *Lilly v. City of New York*, 934 F.3d 222, 229–30 (2d Cir. 2019) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals."). "The reasonable hourly rate should be what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Bergerson v. N.Y. State Off. of Mental Health*, 652 F.3d 277, 289–90 (2d Cir. 2011) (citation and internal quotation marks omitted).

The Supreme Court has explained that district courts should generally use "the prevailing market rates in the relevant community" in determining the reasonable hourly rate. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *See Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y.S*

*Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *see also Grant v. Syracuse*, 357 F. Supp. 3d 180, 200 (N.D.N.Y. 2019) (citation omitted). As relevant here, cases in this District indicate that a rate of $250–$350 per hour is reasonable for partners or experienced practitioners, i.e., those with more than twenty years of experience. *See Krause v. Kelahan*, No. 17-cv-1045, 2026 WL 1686147, at *2, 2026 U.S. Dist. LEXIS 132040, at *5 (N.D.N.Y. June 10, 2026). But courts also consider the following factors in determining a reasonable attorney's fee:

> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill level required by the case; (4) the preclusion of employment with other clients due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the extent of involvement in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228 (quoting *Arbor Hill*, 522 F.3d at 186 n.3).

Here, Plaintiffs request $8,148.75 in attorneys' fees, representing 22.6 hours of attorney time at a rate of approximately $360 per hour for the work Attorney Kornfeld, a partner at the law firm of Blitman & King, LLP, performed in this case. (Dkt. No. 15-2, at 3; Dkt. No. 30-2, at 7). In support of their request, Plaintiffs have filed affidavits by Attorney Kornfeld as well as contemporaneous billing records. (Dkt. No. 15-1; Dkt. No. 15-2, at 2–3; Dkt. No. 30-2, at 1–4, 6–7). According to his affidavit, Attorney Kornfeld is admitted to the bar in Maryland, the District of Columbia, and New York, and has been associated with Blitman & King since 2003. (Dkt. No. 15-1, ¶ 7). Attorney Kornfeld's "background and experience has included practice before administrative agencies, including the National Labor Relations Board, and state and federal court in connection with various legal actions, including actions concerning employee benefit plans." (*See* Dkt. No. 15-1, ¶¶ 1, 7). The Court exercises its discretion to award attorney

fees consistent with the award of attorney fees in this district as explained below. *See Barfield*, 537 F.3d at 151.

Attorney Kornfeld's rate, approximately $360 per hour, falls very near the range of hourly rates found reasonable in this District. Moreover, considering the relevant factors, including Attorney Kornfeld's more than twenty years of practice, experience litigating actions concerning employee benefit plans, efficiency handling this case and the result obtained (entry of default judgment and an award of damages), the Court finds that this rate to be reasonable. The Court finds that the number of hours (22.6 hours) spent preparing the motion for default judgment and supplemental materials are reasonable. In addition, having reviewed Plaintiffs' request for costs in the amount of $648.73, (Dkt. No. 15-2, at 3; Dkt. No. 30-2, at 7), and having found it reasonable, the Court grants this request. Accordingly, the Court awards $8,148.75 in attorney's fees and $648.73 in costs.

**3. Audit Fees**

"Requests for audit fees are 'generally determined by utilizing the same standards the court applies in awarding attorneys' fees.'" *Teamsters Local Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (citation omitted). Thus, "a party requesting audit fees must provide sufficient information to allow a court to determine the reasonableness of the fees requested." *Plumbers, Pipefitters, & Apprentices Local No. 112 Pension Fund v. D.J. Springer, Inc.*, No. 16-cv-0321, 2018 WL 3448684, at *3, 2018 U.S. Dist. LEXIS 118549, at *9 (N.D.N.Y. July 17, 2018). Here, Plaintiffs request $4,129.00 in audit fees. (Dkt. No. 33, at 6). In support of this request, Plaintiffs have filed affidavits by Senior Auditor McCarthy stating that his "firm's fees for performing the audit in this matter are $4,129.00." (Dkt. No. 30-1, at 1–3; Dkt. No. 33, at 5–7). The Court awards $4,129.00 in audit fees.

### 4. Post-Judgment Interest

Plaintiffs request, and are entitled to, post-judgment interest as a matter of right at the statutory rate prescribed by 28 U.S.C. § 1961(a). (Dkt. No. 15-8, at 12); *see Genworth Life & Health Ins. Co. v. Beverly*, 547 F. Supp. 2d 186, 190 (N.D.N.Y. 2008).

### B. Fourth Cause of Action

In the Fourth Cause of Action, Plaintiffs seek an injunction permanently enjoining both the Company and individual Defendant from "further violations of ERISA, LMRA, the Agreements . . . and Collections Policy." (Dkt. No. 5, ¶¶ 49–56). In their status report, Plaintiffs state that this cause of action is moot as to Defendant Company because it "ceased covered operations in November or December 2023." (Dkt. No. 33, at 1). However, Plaintiffs request that the Court hold this cause of action "in abeyance" as to the individual Defendant, "pending the results of the bankruptcy case." (*Id.*). The Court deems the Fourth Cause of Action moot as to Defendant Company. As this action is already stayed as to the individual Defendant, *see supra* note 1, the Court need not enter an additional order of abeyance.

Accordingly, while the Court grants Plaintiffs' damages request as outlined above as to the First Cause of Action in this case, because the Second, Third, and Fourth Causes of Action are stayed and thus unresolved, the Court does not enter judgment at this point.

## III. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiffs' motion for default judgment (Dkt. No. 15) is **GRANTED** with respect to their request for damages in the amount of $229,913.92, representing: $99,344.37 in delinquent contributions and deductions; $59,896.79 in interest, as calculated through July 15, 2025; $57,746.28 in liquidated damages; $8,148.75 in attorney's fees; $648.73 in costs;

$4,129.00 in audit fees; and post-judgment interest at the statutory rate prescribed by 28 U.S.C. § 1961(a); and it is further

**ORDERED** that the Fourth Cause of Action is **DISMISSED without prejudice** as moot as to Defendant Company; and it is further

**ORDERED** that Plaintiffs file a detailed status report by October 30, 2026, including updated information regarding the bankruptcy proceeding and indicating, in the event a stay as to Defendant Rinaldi is no longer in effect, how they intend to proceed as to the remaining causes of action; and it is further

**ORDERED** that Plaintiffs serve copies of this Memorandum-Decision and Order on Defendants, Defendant Rinaldi's bankruptcy attorney, Jessica G. Grady, and Bankruptcy Trustee Mark W. Swimelar, and file a certificate of service within 14 days of the date of this Decision.

**IT IS SO ORDERED.**

Dated: October 7, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge